1  ELLEN M. MAHAN
   Deputy Section Chief
2  Environmental Enforcement Section
   Environment and Natural Resources Division
3  U.S. Department of Justice
   PATRICIA L. HURST
4  Senior Counsel
   Environmental Enforcement Section
5  P.O. Box 7611
   Washington, D.C. 20044
6  (202) 307-1242 (telephone); (202) 616-2427 (facsimile)
7  Patricia.Hurst@usdoj.gov
8
   Attorneys for Plaintiff United States of America
9

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO OFFICE

14

15  UNITED STATES OF AMERICA,          )
                                       )
16              Plaintiff,             )     CASE NO. _____
                                       )
17         v.                          )
                                       )     **COMPLAINT**
18  SIMS GROUP USA CORPORATION,        )
19  d/b/a SIMS METAL MANAGEMENT,       )
                                       )
20              Defendant.             )
                                       )
21

22         Plaintiff, the United States of America ("United States"), through its undersigned

23  attorneys, by the authority of the Attorney General of the United States and at the request of the

24  Administrator of the United States Environmental Protection Agency ("EPA"), is filing this

25  Complaint to enforce federal law, and alleges as follows:

26                          **NATURE OF ACTION**

27         1.     This is a civil action brought pursuant to Section 309 of the Clean Water Act

28  ("CWA" or the "Act"), 33 U.S.C. § 1319, against Sims Group USA Corporation, d/b/a Sims

                                       1

Metal Management ("Sims").  Sims has discharged pollutants without a National Pollutant Discharge Elimination System ("NPDES") permit in violation of Section 301(a), 33 U.S.C. § 1311(a), and of the General Stormwater Permit issued by the State of California.

2.      The United States brings this action to require the payment of appropriate civil penalties pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), as well as the study and remediation of contaminated sediments resulting from the violations.

## JURISDICTION, VENUE AND NOTICE

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, 1355 and 1367.

4.      Venue is proper in this judicial district pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391 and 1395.

5.      Intradistrict assignment is proper in the San Francisco Office pursuant to Civil L.R. 3-2 because the events and omissions giving rise to this Complaint occurred in San Mateo County.

6.      EPA has provided notice of the commencement of this action to the State of California pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## PARTIES

7.      Plaintiff United States is acting at the request of and on behalf of the Administrator of EPA ("Administrator").  The Attorney General is authorized to appear and represent the United States in this action pursuant to CWA Section 506, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

8.      Defendant Sims is a Delaware corporation, and is a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

## FEDERAL STATUTORY AND REGULATORY BACKGROUND

9.      Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person except as authorized by and in compliance with certain other sections of the Act, including Section 402 of the CWA, 33 U.S.C. § 1342.

10.     Section 502(12) defines "discharge of a pollutant" to mean "any addition of any pollutant to navigable waters from any point source" or "any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft." 33 U.S.C. § 1362(12).

11.     Section 502(6) of the Act defines "pollutant" to include, among other things, garbage, chemical wastes, biological materials, wrecked or discarded equipment, and industrial waste discharged into water. 33 U.S.C. § 1362(6).

12.     Section 502(7) of the CWA defines navigable waters "to be the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

13.     EPA regulations promulgated pursuant to the CWA define the term "waters of the United States" to include, inter alia, (i) all waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; (ii) all interstate waters; (iii) all other waters such as intrastate lakes, rivers and streams, including intermittent streams, the use, degradation or destruction of which would or could affect interstate or foreign commerce; (iv) tributaries of waters of the United States; (v) the territorial seas; and (vi) certain wetlands (or wetlands adjacent to these waters). 40 C.F.R. § 122.2.

14.     Section 502(14) of the Act defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel conduit, well . . . [or] container . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

15.     Section 309(b) of the Act, 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates Section 301(a) of the CWA.

### GENERAL ALLEGATIONS

16.     At all times relevant herein, Defendant Sims has operated a scrap metal recycling facility at 699 Seaport Boulevard, Redwood City, California, on property leased from the Port of Redwood City, California ("the Sims Facility").

17.     The Sims Facility includes 13 acres of land located to the east of a public right-of-way known as Herkner Road, as well as a wharf (Wharf 3) and a rail spur located to the west of Herkner Road.  Sims has exclusively used the ship-loading conveyor at Wharf 3, which originates within and extends beyond the fenced and bermed perimeter of the 13-acre parcel. The 13-acre parcel is graded in such a way that most stormwater collects in retention ponds and low points.  Some areas of the 13-acre parcel (such as the conveyor counter-weight and the western driveways) and the Wharf 3 and rail spur areas, drain to the Port's municipal separate storm sewer system (MS4) and/or discharge directly into Redwood Creek. The violations alleged in this Complaint occurred in these areas of the Sims Facility.

18.     The activities conducted at the Sims Facility constitute "industrial activity" for purposes of stormwater requirements pursuant to 40 C.F.R. § 122.26. At the Sims Facility, Sims accepts delivery of bulk loads of scrap metal (generally, cars and large household appliances) that arrive by train at the rail spur, or by truck through the Facility's main gate.  Sims processes the scrap metal by crushing and shredding it.  After the scrap metal is processed, Sims uses magnets to separate out the ferrous metal.  However, other materials remain entrained in the ferrous metal.  These include polychlorinated biphenyls (PCBs) and other residues, which consist of non-ferrous metals, glass, fiber, rubber, automobile fluids, dirt, and plastics from shredded dashboards, car seats, and other non-metallic car parts and household appliances.  Sims stores the separated ferrous metal outside in large stockpiles. When the ferrous metal is ready for shipment to overseas purchasers, Sims loads it onto an elevated conveyor system that transports it to the berth at Wharf 3.  The conveyor originates within the 13-acre parcel, and spans the parcel boundary, Herkner Road and Redwood Creek, terminating at a shuttle that facilitates the discharge directly into a ship's cargo hold.

19.     The material remaining after the ferrous material is separated in the manner described above is comprised of a mix of non-ferrous metals and non-metallic material. This mix is sent to a "Metals Recovery Plant," where Sims separates the non-ferrous metals from the non-metallic material. Afterwards, Sims stores the non-ferrous metal in large bins until it is ready to be sold and loaded onto flatbed trucks that transport this material from the Sims Facility.

The waste from this entire process is referred to as Automobile Shredder Residue (ASR).  Sims exports the ASR for off-site disposal at municipal landfills. The landfills use ASR as an alternative daily landfill cover.

20.     Redwood Creek is tributary to the San Francisco Bay and is navigable in fact.  It is a "navigable water" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7), and a "water of the United States" as defined in EPA's NPDES regulations, 40 C.F.R. Part 122.

21.     From at least November 22, 2002, until July 9, 2012, Sims discharged pollutants within the meaning of Section 502(6) of the Act, 33 U.S.C. § 1362(6), including scrap metal waste from its elevated conveyor system to Redwood Creek in the course of conducting industrial activities at the Facility as described in Paragraphs 18-19 of this Complaint.  The conveyor system is a point source within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14), because it is a confined and discrete conveyance from which pollutants are or may be discharged.

22.     The State of California has been authorized by EPA to administer the NPDES program within its jurisdiction pursuant to Section 402(b) of the Act, 33 U.S.C. § 1342(b), and to issue NPDES permits authorizing the discharge of pollutants directly into navigable waters of the United States in compliance with the applicable requirements of Sections 301 and 308(a) of the Act, 33 U.S.C. §§ 1311 and 1318(a), and such other conditions as the Administrator determines are necessary to carry out the provisions of the Act.

23.     The State of California, through the California State Water Resources Control Board, issued a general permit for stormwater associated with industrial activity in 1997. *See* Water Quality Order No. 97-03-DWQ, NPDES Permit No. CAS000001 ("General Stormwater Permit").  The Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board"), administers the General Stormwater Permit in the San Francisco Bay area, which includes the Port of Redwood City.

24.     Sims obtained authorization from the Regional Board for industrial activities under the General Stormwater Permit in 1997. The General Stormwater Permit requires Sims to: (1) identify industrial activities at Wharf 3 and the rail spur in the Facility's SWPP, see General

1   Permit Sections A-4 and 8; (2) implement adequate best management practices at Wharf 3 and

2   the rail spur to address stormwater discharges and minimize the discharge of pollutants from

3   these areas, see General Permit Section A-8; and (3) conduct adequate stormwater monitoring,

4   see General Permit Sections B-1, 3, 4 and 5.  Sims failed to do all of these things.

5          25.     Rainfall data gathered by NOAA's Redwood City Weather Station approximately

6   3 miles from the Sims Facility show that, from September 30, 2008, through April 1, 2013,

7   during the period of time Sims was out of compliance with the General Stormwater Permit, the

8   Sims Facility experienced 49 days of rainfall measuring at least one-tenth of an inch.  Sims

9   therefore discharged pollutants in stormwater on at least 49 different occasions during this

10   period.

11          26.     In July 2003, Sims assessed the lateral and vertical extent of scrap metal along the

12   shore line near the Sims conveyor system and Wharf 3.  Fourteen of 32 sediment samples were

13   visually observed to contain scrap metal.  Sims concluded that "scrap metal and rust are present

14   in a relatively thin layer [approximately 2 inches from the sediment surface] in the vicinity of the

15   Sims conveyor system."  Sims Investigation Report, p. 5.  Sediment samples were analyzed for

16   total metals, and some exceeded the California Code of Regulations Total Threshold Limit

17   Concentration for copper, lead, nickel and zinc.  The five sediment samples with the highest total

18   metals concentrations were analyzed for leaching using a modified waste extraction test.

19   Barium, total chromium, nickel and zinc leached at detectable levels.

20          27.     As described below, since at least November 22, 2002, and until the conveyor was

21   enclosed, Sims allowed metal and other material to fall from the ship-loading conveyor at Wharf

22   3 to Redwood Creek during ship-loading activities, and failed to adequately prevent pollutants

23   associated with its industrial activities at Wharf 3 and the rail spur from discharging in

24   stormwater to Redwood Creek.

25                          **FIRST CLAIM FOR RELIEF:**

26        **DISCHARGE OF POLLUTANTS TO WATERS WITHOUT A PERMIT**

27          28.     Paragraphs 16 through 27 are realleged and incorporated herein by reference.

28

29. On multiple occasions, from at least November 22, 2002, to July 9, 2012, Sims discharged pollutants, within the meaning of Section 502(6) of the Act, 33 U.S.C. § 1362(6), from a point source or point sources, within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14), from its ship-loading conveyor at Wharf 3 directly to Redwood Creek without CWA permit authorization from the California Water Board or EPA, in violation of Section 301 of the Act, 33 U.S.C. § 1311(a).

30. On at least one occasion on or about August 25, 2011, a Sims dust-control water truck discharged non-stormwater to Redwood City's municipal separate storm sewer system serving Herkner Road without CWA permit authorization from the California Water Board or EPA, in violation of Section 301 of the Act, 33 U.S.C. § 1311(a).

31. The discharges referenced in the preceding Paragraphs resulted in the addition of pollutants from a point source to navigable waters and/or to waters of the contiguous zone or the ocean, within the meaning of Section 502 of the Act, 33 U.S.C. § 1362, and thus constitute the "discharge of pollutants" as defined by Section 502(12) of the Act, 33 U.S.C. § 1362(12), and 40 C.F.R. § 122.2.

32. Each discharge of pollutants described in Paragraphs 28 and 29 of this Complaint constitutes a separate violation of Section 301 of the Act, 33 U.S.C. § 1311.

33. Under Sections 309(b) and (d) of the Act, 33 U.S.C. §§ 1319(b) and (d); the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. § 2461 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at Title 40 of the Code of Federal Regulations (CFR) Part 19, Sims is liable for a civil penalty of up to $32,500 per day for each violation of Section 301 of the Act, 33 U.S.C. § 1311, occurring before January 13, 2009, and a civil penalty of up to $37,500 per day for each violation of Section 301 of the Act, 33 U.S.C. § 1311, occurring on or after January 13, 2009.

**SECOND CLAIM FOR RELIEF:**

**FAILURE TO COMPLY WITH GENERAL STORMWATER PERMIT**

34. Paragraphs 16 through 27 are realleged and incorporated herein by reference.

1       35.     From at least November 22, 2002, through April 1, 2013, Sims failed to comply

2 with the General Stormwater Permit in several ways, including but not limited to (i) failure to

3 develop an adequate Stormwater Pollution Prevention Plan by failing to include its industrial

4 activities at Wharf 3 and the Rail Spur within its scope; (ii) failure to implement best

5 management practices that adequately addressed (a) track out from the main yard, which could

6 become entrained in stormwater and discharged to the storm sewer system, (b) discharge of

7 stormwater flowing from beneath the conveyor's counterweight structure located in the main

8 yard to the storm sewer system, and (c) stormwater discharges associated with industrial

9 activities at Wharf 3 and the Rail Spur; (iii) failure to develop and implement an adequate

10 monitoring program which includes (a) quarterly visual observations of non-stormwater

11 discharges at Wharf 3 and the Rail Spur; (iv) monthly visual observations at Wharf 3 and the

12 Rail Spur of stormwater events during yearly wet seasons (*i.e.,* October 1 through May 30) in

13 2008, 2009, 2010, and 2011; and (v) sampling for stormwater discharges from the Conveyor's

14 underlying platform and also from beneath the Conveyor's counterweight structure located at the

15 perimeter of the Facility's main yard adjacent to Herkner Road twice every wet season (*i.e.*, on

16 the first storm event of the wet season and at least one other storm event) in 2008, 2009, 2010

17 and 2011.

18       36.     From at least September 30, 2008, through April 1, 2013, during the time Sims

19 was out of compliance with the General Stormwater Permit as described in the paragraph above,

20 the Sims Facility experienced at least 49 days of rainfall measuring at least one-tenth of an inch

21 that resulted in the discharge of pollutants in stormwater from the Sims Facility to Redwood

22 Creek and/or the City municipal separate storm sewer system.

23       37.     Each violation of the General Stormwater Permit described in Paragraphs 34 and

24 35 of this Complaint constitutes a separate violation of Section 402 of the Act, 33 U.S.C. §§

25 1311 and 1342.

26       38.     Under Sections 309(b) and (d) of the Act, 33 U.S.C. §§ 1319(b) and (d); the

27 Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890

28 (1990), amended by Pub. L. No. 104-134, § 31001(s)(1), 110 Stat. 1321-373 (1996) (28 U.S.C. §

2461 note); 61 Fed. Reg. 69,360 (Dec. 31, 1996); and 69 Fed. Reg. 7121 (Feb. 13, 2004), codified at Title 40 of the Code of Federal Regulations (CFR) Part 19, Sims is liable for a civil penalty of up to $32,500 per day for each violation of Section 301 of the Act, 33 U.S.C. § 1311, occurring before January 13, 2009, and a civil penalty of up to $37,500 per day for each violation of Section 301 of the Act, 33 U.S.C. § 1311, occurring on or after January 13, 2009.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that the Court:

1. Order Sims to characterize pollutant concentrations and toxicity in sediments in the near-shore waters in the vicinity of the conveyor, and to develop and implement a remedial action plan to remove those contaminated sediments;

2. Assess civil penalties against Sims in favor of the United States of America in an amount not to exceed $32,500 per day for the violations alleged to occur before January 13, 2009; and in an amount not to exceed $37,500 per day for the violations alleged to occur on or after January 13, 2009.

3. Award the United States of America its costs and disbursements in this action; and

4. Grant such other relief as this Court deems appropriate.


Respectfully submitted,


ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

9

1

2
PATRICIA L. HURST
3
Senior Counsel
Environmental Enforcement Section
4
Environment and Natural Resources Division
U.S. Department of Justice
5
P.O. Box 7611
Washington, D.C.  20044
6
(202) 307-1242
7

8    Of Counsel:

9    RICH CAMPBELL
Assistant Regional Counsel
10   U.S. Environmental Protection Agency
Region IX
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28